**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| Linda Eaton-Stephens, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 4:15-cv-582-BJ |
| | § | |
| Grapevine Colleyville | § | |
| Independent School District, | § | |
| *Defendant*. | § | |

**PLAINTIFF'S BRIEF IN RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**THE BLEDSOE LAW FIRM, PLLC**

By:     **/s/Gary L. Bledsoe**
        Gary L. Bledsoe
        State Bar No. 02476500
        garybledsoe@sbcglobal.net
        State Bar No. 24087801
        316 W. 12th Street
        Austin, Texas 78701
        (512) 322-9992 Telephone
        (512) 322-0840 Fax

        _____
        Jesse Gaines
        State Bar No.07570800
        gainesjesse@ymail.com
        P.O. Box 50093
        Ft Worth, TX 76105
        Tel: (817) 714-9988

        **ATTORNEYS FOR PLAINTIFF**

i

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………...ii

TABLE OF AUTHORITIES …………………………………………………iii

  A.  INTRODUCTION…………………………...………………………………..4

  B.  STATEMENT OF FACTS……………………………………………………5

  C.  ARGUMENT…………………………………………………………………8

  D.  OBJECTIONS………………………………..……………………………25

  E.  SUMMARY-JUDGEMENT
     EVIDENCE……………………………………………………………26

  F.  CONCLUSION/PRAYER…………………………………………………...36

  I .  Plaintiff plead sufficient facts to support her claim for disparate impact under 42 USC §2000e-2(k).......................................................................................................................10

  II .  Plaintiff has established a prima facie case of discrimination based on race and Defendant's proffered reason for the adverse employment action taken against Plaintiff is pretext. ……………………………………………………………………………11

  III.  Plaintiff has established a prima facie case of retaliation and Defendant's  proffered reason for the adverse employment action is pretext. ……………………………………16

  IV.  Plaintiff exhausted her administrative remedies with regard to her claim of age discrimination and this Court has subject matter to consider that claim…………………..18

  V.  Summary Judgment should be denied on Plaintiff's claim of discrimination on the basis of her disabilities because Plaintiff exhausted her administrative remedies and properly pled the same in her complaint…………………………………………………………..…....20

  VI.  Defendant's Motion should be denied because Defendant engaged in Spoliation of Evidence, a matter which must be decided by the trial court……………………………..28

APPENDIX

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Casino Queen. Inc.*, 739 F.3d 972, 982 (7th Cir.2014)..........................17

*Allen v. Highlands Hosp. Corp.,* 545 F.3d 387, 401 (6th Cir. 2008)...........................23

*Ash v. Tyson Foods*, 546 U.S. 454 (2006)..................................................................14

*Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009)..........................................................12

*Baker v. Macon Res.,* 750 F.3d 674, 677 (7th Cir. 2014).............................................15

*Barton v. Zimmer, Inc.,* 662 F.3d 448, 453-54 (7th Cir. 2011)....................................15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)................................................13

*Benuzzi v. Board of Educ. of Chi.*, 647 F.3d 652, 665 (7th Cir.2011)........................20

*Bienkowski v. American Airlines*, Inc., 851 F.2d 1503, 1508 (5th Cir. 1988)............23

*Blizzard v. Marion Tech. Coll.,* 698 F.3d 275, 285 (6th Cir. 2012)............................15

*Brookshire Bros. v. Aldridge*, 438 S.W.3d 9, 13 (Tex.2014)..........................28,29,30

*Bunn v. Khourny Enters.*, 753 F.3d 676, 683-84 (7th Cir.2014)..................................25

*Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 67-68 (2006)............26,27

*Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir.2015)..............24

*CBOCS West, Inc. v. Humphries,* 553 U.S. 442, 449 (2008)........................................13

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)....................................................11

*Cresthaven Nursing Residence v. Freeman*,
    134 S.W.3d 214, 225 (Tex.App.—Amarillo 2003, no et.)...............................28

*Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir.1996).............................18

*Crawford v. Metropolitan Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 273 (2009).......21

*Desert Place, Inc. v. Costa*, 59 U.S. 90, 99 (2003)......................................................14

*Dotson v. Pfizer, Inc.*, 558 F.3d 284, 293 (4th Cir. 2009).........................................25

*EEOC v. New Breed Logistics*, 783 F.3d 1057, 1067-68 (6th Cir.2015)...................................21

*EEOC v. LHC Grp.*, 773 F.3d 688, 694-95 (5th Cir.2014)........................................................25

*Erdman v. Nationwide Ins.*, 582 F.3d 500, 509 (3d Cir.2009)...................................................26

*Estate of Bassat v. School Dist. No. 1,* 775 F.3d 1233, 1240 (10th Cir.2014).........................15

*Flowers v. Southern Reg'l Physicians Servs.*, 247 F.3d 229, 234 (5th Cir.2001)......................24

*Garrett v. Judson Indep. Sch. Dist., No. SA-06-CA-0174 OG (NN),*
     2007 U.S. Dist. LEXIS 36811 (W.D. Tex. May 20, 2007)...............................................22

*General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982).........................13

*General Dynamics Land Sys. v. Cline*, 540 U.S. 581, 595-96 (2004).......................................23

*Gordon v. U. S. Capitol Police,* 778 F.3d 158, 164 (D.C. Cir. 2015).......................................26

*Harvill v. Westward Comms.*, 433 F.3d 428, 439-40 (5th Cir.2005).....................................16,21

*Hayden v. La-Z-Boy Chair Co.*, 9 F3rd 617, 619 (7th Cir, 1993).........................................18,22

*Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 416-17 (4th Cir.2014)......................................22

*Hull v. Stoughton Trailers, LLC*, 445 F. 3d 949, 951 (7th Cir. 2006).........................................26

*Ienco v. Angarone*, 429 F.3d 680, 684-85 (7th Cir. 2005).........................................................31

*J. Gils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.,*
     76 F.rd 1245, 1251 (1st Cir. 1996)..................................................................................11

*Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240-41 (2d Cir.2007)............................18

*Keelan v. Majesco Software, Inc.,* 407 F.3d 332, 342 (5th Cir. 2005).......................................15

*Lemaire v. Louisiana DOT & Dev/,* 480 F.3d 383, 389 (5th Cir.2007)......................................22

*Lewis v. City of Chi.,* 560 U.S. 205, 213 (2010).........................................................................12

*McDermott v. Lehman,* 594 F. Supp. 1315, 1317 (D. Me. 1984)..............................................31

*Millea v. Metro-N. R.R.,* 658 F.3d 154, 164 (2d Cir.2011)........................................................27

*Miller v. American Airlines, Inc. 525 F.3d 520, 525 (7th Cir. 2008)*..........................................21

*Miner Dederick Constr., LLP v. Gulf Chem. & Metallurgical Corp.,*

403 S.W.3d 451, 467 (Tex.App.—Houston [1st Dist.] 2013)...................................28,29

*National Tank Co. v. Brotherton,* 851 S.W.2d 193, 204 (Tex.1993)...........................................28

*National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109-10 (2002)................................17

*New York City Transit Auth. v. Beazer,* 440 U.S. 568, 584 (1979)...........................................13

*O'Connor v. Consolidated Coin Caterers Corp,* 517 U.S. 308, 313 (1996).............................23

*Pennsylvania State Police v. Suders,* 542 U.S. 129, 140-41 (2004)...........................................19

*Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 146-47 (2000)...................................14

*Santa Fe Ry. v. White,* 548 U.S. 53 (2006)................................................................................27

*Seeger v. Cincinnati Bell Tel. Co.,* 681 F.3d 274, 282 (6th Cir.2012).......................................26

*Smith v. Lockheed-Martin Corp.,* 644 F.3d 1321, 1328 (11th Cir. 2011)...................................14

*Stewart v. Waco ISD,* 711 F.3d 513, 518 (5th Cir.2013).............................................................25

*Staub v. Proctor Hosp.,* 562 U.S. 411, 413 (2011)......................................................................19

*Swierkiewicz v. Sorema,* 534 U.S. 506, 508 (2002)................................................................12, 13

*Tadlock v. Powell,* 291 F.3d 541, 547 (8th Cir. 2002)...............................................................16

*Telesis/Parkwood Ret. I, Ltd. v. Anderson,*
462 S.W.3d 212, 253 (Tex.App.—El Paso 2015, no pet.)............................................29

*Thompson v. City of Waco, 764 F.3d 500, 502-03 (5th Cir.2014)*..............................................11

*Tolan v. Cotton,* 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014)............................................11

*Trevino v. Ortega,* 969 S.W.2d 950, 957 (Tex.1998) (Baker, J., concurring)............................29

*Troupe v. May Department Stores Co.,* 20 F.3d 734, 737 (7th Cir. 1994) (emph. added).........14

*University of Tex. Sw. Med. Ctr. v. Nassar,* 133 S.Ct. 2517, 2533, 186 L.Ed 2d 503 (2013)...20

*Vance v. Ball State Univ.,* 133 S.Ct. 2434, 2439, 186 L.Ed. 2d  565 (2013)...........................19

*Velasquez-Perez v. Developers Diversified Rlty. Copr.,* 753 F.3d 265, 274 (1st Cir.2014)......19

*Wackenhut Corp. v. Gutierrez*, 453 S.W.3d 917, 921 (Tex.2015)...........................................29

*Wal-Mart Stores v. Johnson*, 106 S.W.3d 718, 721 (Tex.2003)...........................................28,29

*Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 645-46 (1989)...........................................12

*Wilks v. Elizabeth Arden, Inc.,* 507 F. Supp. 2d 179, 184-85 (D. Conn. 2007).......................31

*Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982)................................................22

**Other Authorities**

Fed. R. Civ. P. 56(a).........................................................................................................10

Fed. R. Civ. P. 56(e)(3).....................................................................................................13

Fed R. Civ. P. 56(c)(1)(A)..................................................................................................2

**Statutes**

42 U.S.C. §2000e-3…………………………………………………………………..13, 20

42 U.S.C. § 2000e-2(k)(1)(A)(i).........................................................................................13

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| Linda Eaton-Stephens, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:15-cv-582-BJ |
| | § | |
| Grapevine Colleyville | § | |
| Independent School District, | § | |
| Defendant. | § | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff asks the Court to deny defendant's motion for summary judgment.

### A.  INTRODUCTION

1.      Plaintiff is Linda Eaton-Stephens; defendant is Grapevine Colleyville Independent School District (GCISD).

2.      On August 3, 2015, plaintiff sued defendant for discrimination and retaliation. On May 16, 2016, Plaintiff filed her First Amended Complaint.

3.      On May 26, 2016, defendant filed its Second Amended Answer and Response to Plaintiff's First Amended Complaint.

4.      On June 22, 2016, defendant filed a motion for summary judgment on plaintiff's claim for disparate impact, discrimination based on race, age, and disability, and retaliation.

5.      Summary judgment is improper in this case because there are genuine disputes of material fact on each element of plaintiff's claim for disability discrimination, FMLA and disability retaliation, race discrimination and retaliation.  Plaintiff must prove that race was a motivating factor in his claim of racial discrimination.  In regards to the claim of retaliation

1

Plaintiff must show that but for her engaging in protected activity one or more of the adverse actions would not have occurred.  In regards to the disability discrimination, Plaintiff must prove she had a disability and that after appropriate requests she was not accommodated, and as to retaliation for her disability or being on Family and Medical Leave Act (FMLA) status, she must prove that negative or unwanted actions occurred to her as a result of her being on such status (disability or FMLA).

## B.  STATEMENT OF FACTS

6.     Plaintiff, Linda Eaton-Stephens, was a lead counselor at Grapevine Colleyville Independent School District (GCISD), GCISD is the Defendant here.  Ms. Stephens has been a counselor for approximately 15 years at GCISD and 35 years total.  *See* Appendix Tab 24, p. 0260-0261 (May 1, 2015 Letter to EEOC).   She has a degree from Northeastern State University in Oklahoma that she completed in 3 years and a Master's from the same institution in Guidance and Counseling.  *See* Appendix Tab 22, p. 0070 (Stephens Deposition p. 20, 13-24). Stephens was discriminated against by Defendant on the basis of race, age and disability. She was also subjected to a hostile work environment on the basis of the same.

7.     After being away for some time and working at other districts, Ms. Stephens returned to work at GCISD for her latest sting that ended in this termination.  When the district checked with others she worked for in doing a background check they received glowing remarks. Appendix Tab 33, p. 0295-0297.  During this last tenure she received very good evaluations generally though the last one was not as good as the previous ones. Appendix Tab 34, p. 0297-0335.  Stephen's' relationship with the principal was good until she told him that the person he had selected for an Assistant Principal position was bigoted and had taken actions against African-American students and faculty members.  Appendix Tab 22, p. 0122-0124 (Stephens

2

Deposition p. 72 line 16 to p. 74 l. 21).  The principal turned colors when she said this and he stopped speaking to her.  Id.  Stephens was approved for Family and Medical Leave effect October 1, 2013.  Appendix Tab 7, p. 0009.  Plaintiff's immediate co-workers were informed that she was on FMLA status, and they responded by being hateful, mean, vicious and malicious. Appendix Tab 22, p. 0133-135 (Stephens Deposition p., 83 line 8 to p. 85 line 23).  It was in the early part of the school year (FMLA was effective on October 1, 2013) that  the hostility by Marsha Fields and Michaelann Tapp and other GCISD personnel toward Ms. Stephens increased and Ms. Stephens's co-workers felt that Fields and Tapp were trying to get Ms. Stephens fired or non-renewed.  *See* Appendix Tab 2, p. 0002 (Declaration of Stephany Bufe).  Ms. Stephens was excluded by these same individuals from office staff meetings, lunch, and socializing.  *Id.* Information appeared to be intentionally withheld from Ms. Stephens in an effort to make her look as though she could not do her job.  *Id.*  There was a double standard when it came to taking leave and Ms. Stephens was constantly harassed and scrutinized for taking her FMLA leave while Fields (white) who appears to have been out just as much as Ms. Stephens was treated better than Ms. Stephens when she took her leave. *Id.*  Ms. Stephens' working environment was hostile and became increasingly hostile with time.  *Id.*  This impacted Ms. Stephens's work as they refused to leave her messages and began pointing out areas of her performance they said were poor.  *Id.*  Fields degradingly referred to Stephens as the little black counselor.  Appendix Tab 22, p. 0105 (Stephens deposition p. 55 ll 17-23).  Others around the campus became aware of this description.  Appendix Tab 22, p. 0107 (Stephens deposition p. 57 lines 2-19).  Tapp and Fields, her co-workers, ate together in Fields office without Stephens. Appendix Tab 22, p.0097-0098  (Stephens deposition p. 47 l. 24 to p. 48 l. 3).  They told lies about her, mocked her and made false allegations about her.  Appendix Tab 22, p. 0098-0105 (Stephens depo p. 48 line 14

to p. 55 line 9).  Plaintiff reported the hostile environment to the principal and he informed her

simply to fix it.  Appendix Tab 22, p. 0105-0107 (Stephens deposition p. 55 l. 24 to p. 57 l. 1.

Things got so bad that she also complained to the district's testing official because it involved

test training, the the official informed her that it was the principal's responsibility to handle the

problem.  Appendix Tab 22, p. 0122 (Stephens deposition p. 72 lines 6-12).  On another occasion

she reported a lie to the principal and assistant principals that her co-workers spread about her

being intoxicated .  Appendix Tab 22, p. 118 (Stephens deposition p. 68 lines 3-6).  When Ms.

Fields and other whites had issues, however, the principal fixed them.  Id.  Stephens noted that

Tapp and Fields did not want to take direction from the Black counselor.  Appendix Tab 22, p.

0103-0105 (Stephens deposition p. 53 l. 12 to p. 55 l. 9 and p,. 55 ll. 17-23.

       8.     Frieda Landerholm witnessed how "Marsha Fields and Michaelann Tapp would

withhold critical information that would interfere with [Ms. Stephens's] ability to complete her

work.  Additionally, at times Marsha Fields would make innuendos about [Ms. Stephens's]

behavior that were both demeaning and inaccurate." *See* Appendix Tab 4, p. 0004 (Declaration

of Frieda Landerholm). As an example, Ms. Landerholm's Declaration also describes Marsha

Fields accusing Ms. Stephens of being under the influence of alcohol at work on a particular day

although Ms. Stephens was working with Ms. Landerholm and Ms. Landerholm saw no

indication of this.  *Id.*  The principal himself complained about Plaintiff's leave when she was

out on FMLA.  Appendix Tab 22, p. 0130 (Stephens deposition p. 80 ll. 4-16).  Fields even

created a scene in front of a parent and shouted at and humiliated Stephens.  Appendix Tab 22, p.

0141-0144 (Stephens deposition p. 91 l. 22 to p. 94 l. 10).

       9.     Further, Fields and Tapp would talk about how Ms. Stephens was incapable of

doing her job and would intercept teachers and students from going to Ms. Stephens about things

she had previously handled with ease.  *See* Appendix Tab 5, p. 0005 (Declaration of Julie Buttell).  Fields and Tapp would eat and socialize together and exclude Stephens who was also on their team but would be left to eat or be alone.  *Id.*

      10.    Stephens complained to Human Resources, the Principal and Assistant Principals and no action was taken to prevent the ongoing discrimination and hostile work environment. See Appendix Tab 22, p. 0091, 0105-0107,  0124 (Stephens deposition, p. 41 ll. 5-9, p. 55 l. 24 to p. 57 l. 1, p. 74 ll. 2-7).  Issues of race were handled differently than other matters and that because of the FMLA and race issues he wanted to get rid of her according to Stephens. Appendix Tab 22, p. 0206-0208 (Stephens deposition p. 156 l. 19 to p. 158 l. 20).  Stephens felt, however, that when she made the complaints of harassment, discrimination, retaliation, etc. to the principal, he had the responsibility to take the matter higher.  Appendix Tab 22, p. 0209 (Stephens deposition p. 159 ll. 6-9).  Some instances of discrimination occurred in front of the Principal, Pete Valamides', but he also failed to act in those instances.  Stephens engaged in other instances of protected activity after which Defendant retaliated against her.  For example, Ms. Stephens complained of the hiring of an administrator whom Ms. Stephens informed the Principal that on information and belief she believed had engaged in discriminatory behavior. Ms. Stephens's complaint was ignored and the administrator was hired.  In correspondence to Human Resources, Plaintiff informed Human Resources that she was encountering problems because of the FMLA absences.  Appendix Tab 35, p. 0336-0337 and Appendix Tab 36, p. 0338. And as noted above she also informed the district testing coordinator.  According to DIA220906 the district is responsible for any harassment by fellow employees or non-employees 'if the District, its agents, or its supervisory employees knew or should have known of the conduct." Appendix Tab 16, p. 0024-0025.  District policy also provides that reports of discrimination

5

should be made to the principal.  Appendix Tab 16, p. 0027.  It is the principal who then has the responsibility to go to the Superintendent or other person.  Appendix Tab 16, p. 0029.

11.    Ms. Stephens also complained about Defendant refusing to hire Blacks to work in the office--even though they were the most qualified applicants.  Appendix Tab 28, p. 0276-0278 (3 page attachment to EEOC Charge of Discrimination ending in -055).  After complaining, Ms. Stephens was no longer included on interview panels for prospective employees.  *Id.*  Even counselors (except for Ms. Stephens, the lead counselor and only Black counselor) were included in the interview panels but not Ms. Stephens after she complained. *Id.*

12.    In addition, Ms. Stephens was overlooked for Committee assignments and Whites who were less experienced, did not have disabilities on information and belief, and had less ties to the community than Ms. Stephens does were selected instead. *Id.*

13.    The hostile work environment caused Ms. Stephens to suffer from increased stress which her doctor described as a disability and for which the doctor prescribed intermittent leave from work after which Ms. Stephens requested FMLA with the support of her doctor.  *Id.*  This meant Ms. Stephens was out 1 to 2 days per week sometimes.  *Id.*

14.    Ms. Stephens was subjected to increased scrutiny and hostility as well as harassing phone calls and comments regarding the veracity of her reasons for taking intermittent FMLA leave. *Id.*   Ms. Stephens complained to her Principal, Pete Valamidez, but the only response from him was that she only had a job because of him, they wanted her gone, and he provided no correction or assistance following the complaint by Ms. Stephens to him.  *Id.*

15.    Ms. Stephens was tutoring, Michael Cepeda, a young hispanic family man who worked for the district in IT and was attending Tarrant County Community College as an ESL student, and she did so free of charge. *Id.*  Ms. Stephens was wrongfully accused of writing

papers for Mr. Cepeda and this the Defendant claims was its basis for the investigation and adverse employment actions against Ms. Stephens.  However, Michael Cepeda "never asked anyone to complete [his homework] for him, nor did he want them to."  Appendix Tab 2, p. 0002 (Declaration of Stephany Bufe).  Instead, Ms. Stephens taught him how to do it.  *Id.*  Cepeda himself sent a letter to the Texas Workforce Commission making it clear that Ms. Stephens only tutored him because of his disabilities and English as a second language and she did not do his work for him and the work she did for him was not during working hours.  Appendix Tab 25, p. 0262-0266 .  The alleged policy violation was mere pretext. It was well known that Defendant "was trying to get rid of Ms. Stephens and that they [were] documenting everything on her."  *Id.*

16.     Steven Perez, a former co-worker of Ms. Stephens, describe how he "admired [her] because of her pure honesty…." among other things including her work ethic and "honest advice." Appendix Tab 6, p. 0006 (Declaration of Stephen Perez).

17.     Moreover, Ms. Stephens has been a tutor for most of her teaching career without incident.  Mr. Weldon Washington describes how Ms. Stephens tutored his son who has a learning disability from the time he was in elementary school through high school and his improvement as a result of Ms. Stephens's tutoring led him to go on to graduate from college. *See* Appendix Tab 1, p. 0001 (Declaration of Weldon Washington). Mr. Washington tells how he and his wife monitored the tutoring and never found any impropriety in Ms. Stephens's teaching methods. *Id.*  Mr. Washington said, "She always made sure that our son worked hard, independently, and understood how to get the correct answers. At no time was there an instance where we thought Wesley's tutoring was compromised…." *Id.*

18.     Marsha Fields, who was engaged in the bigoted, harassing and retaliatory behavior against Ms. Stephens was involved in the complaint that falsely alleged that she

7

engaged in plagiarism.  Appendix Tab 24, p. 0260-0261.  The principal who Stephens had accused of bigoted behavior was also involved.  Appendix Tab 22, p. 0141 (Stephens deposition p. 91 ll. 11-21).  Harrison even informed Lamb that Stephens and the witness Fields did not get along.  Id. Stephens said her position has always been that she never took an online class for Ms. Cepeda, she only tutored him and critiqued his paper.  Appendix Tab 22, p. 0147- 0150(Stephens deposition p. 97 l, 7 to p.100 l. 8).   And like Cepeda told the Workforce Commission, Stephens said that Michael had ADHD and English was his second language so she tutored him and critiqued his papers.  Appendix Tab 22, p. 0151 (Stephens deposition p. 101 ll. 2-15).  She never charged him for the services.  Appendix Tab 22, 0152 (Stephens deposition p. 102 ll. 3-20).  On the date of the incident in question, she simply sent the final copy in for him.  Appendix Tab 22, p. 0153-0154 (Stephens deposition p. 103 l. 23 to p. 104 l. 20).  She said it was after school hours.  Appendix Tab 22, p. 0154-0155 (Stephens deposition p. 104 l. 21 to p. 105 l. 4).  Ms. Stephens was retaliated against throughout the time of her employment after complaining as well as when she was called in by Human Resources, investigated, placed on administrative leave and constructively discharged. Becky Lamb and Gina Padgett interrogated the Plaintiff.  Initially Lamb allegedly questioned her at the school.  Subsequently, she was informed by the principal to pack all of her things and go to Human Resources, implying clearly she was being terminated. Stephens was in their office less  than 2 hours when they presented her with 2 letters, one saying she was terminated and the other saying she was placed on administrative leave.  Appendix Tab 22, p. 0162-0163 (Stephens deposition p. 112 l. 19 to p. 113 l. 17).  She signed one of the letters but was not provided a copy.  The letters they have produced do not include the letters presented to her that day.  Appendix Tab 22, p. 0164 (Stephens deposition p. 114 ll. 3-12).  Throughout the process she complained about how they were discriminating against her. Appendix Tab 22, p.

0152-0153, 0157-0160, 0162-0163 (Stephens deposition p. 102 l. 21 to p. 103 l. 2, p. 107 l. 16 to

p., 110 l. 2 and p. 112 l. 19 to p. 113 l. 17).   Nonetheless, they interrupted her and never gave her

an opportunity to even give her side of the story.  Appendix Tab 22, p. 0160-0162 (Stephens

deposition p. 110 l. 5 to p. 112 l. 18).  She said she was even offended by the suggestion that she

and the young Cepeda were sexually involved.  Appendix Tab 22, p. 0147-0148 (Stephens

deposition p. 97 l. 7 to p. 98 l. 11).  She had opted for the letter that requested an investigation,

but talked with her ex-husband who advised her that because of the way they treated her and

their involvement in the future investigation she really had no choice but to resign because of her

need to find a job.  Appendix Tab 22, p. 0169-0171 (Stephens deposition p. 119 l. 2 to p. 121 l.

18).  Plaintiff had withdrawn most of her retirement because her young son had cancer and it

took massive expenses to pay for the treatment.  Appendix Tab 22, p. 0084 (Stephens deposition

p. 34 ll. 6-18).  Further, they had already told her that she was guilty of the allegation.  Appendix

Tab 22, p. 0173-0175 (Stephens deposition p. 123 l. 11 to p., 125 l.8).  Cepeda said they treated

him in the same unprofessional manner, attempting to intimidate him into saying that they

wanted him to say.  Appendix Tab 25, p. 0262-0266.

   19. Defendant lied to the Texas Workforce Commission (TWC)  about the reasons

and facts behind its actions against Ms. Stephens including originally admitting to TWC that it

had fired her which they now deny.  Appendix Tab 12, p. 0018. The original TWC Hearing

Officer ruled in Ms. Stephen's favor.  Defendant appealed, told the next-level TWC officer a

different version of the story, and those untruths caused Ms. Stephens additional financial

damage in excess of $5,000 which she was forced to pay back to the TWC.  Plaintiff complained

about discrimination throughout the ordeal in February as aforementioned.  She subsequently

timely filed her complaint with the EEOC.  Before the time for filing her EEOC complaint had

expired, Plaintiff secured a law firm who sent a communication asking the school district to preserve all of the relevant records, including electronic, magnetic and data records and then all tangible records and documents too among others.  Appendix Tab 23, p. 0256-0259.  Things that were stored electronically that could be retrieved or examined were expressly requested to be retained.  Id.  We asked for the chain of custody of Plaintiff's computer and the hard drive and the question was objected to. Appendix Tab 19, p. 0038 (Interrogatory No. 5).  We asked for a description of the search that was used to generate information from the computer that was used by Padgett and Lamb and that question was objected to.  We asked who actually took the documents from the machine and they objected to that one as well.  See Interrogatory 6.  Even though there was a hotly contested benefits hearing before the Texas Workforce Commission and Plaintiff complained about discrimination and was terminated while on FMLA, they wiped all of her computers.  Appendix Tab 19, p. 0037 (Interrogatory No. 3).  Plaintiff and Ron Eaton deny placing Cepeda's name on the paper regarding the Third Great Awakening.  Further, seeing the drive will show how little private information was on the drive overall.  This goes to the issue they have raised about the proper use of the computer.  District policy requires that once a discrimination allegation is raised, all records must be maintained regarding the allegation.  Appendix Tab 16, p. 0030.  However, it is not only electronic records but also any documents regarding any sorts or searches that were to be done to pull up records, the methodologies if written and even the two documents presented to the Plaintiff.  Appendix Tab 22, p. 0164 (Stephens deposition p. 114 ll. 3-12).

20.     Ms. Stephens filed a Charge of Discrimination with the EEOC although this is by no means her first instance of engaging in protected activity. Ms. Stephens engaged in protected activity by complaining to Pete Valamidez, the school Principal, complaining to the Assistant

10

Principal, complaining to HR, and complaining to the District testing coordinator (who told her to go to her principal) about the discrimination and hostile work environment she was subjected to by the District as well as the hiring of persons known to discriminate.  In  addition, Ms. Stephens complained of discrimination during the investigation of her by HR, among other instances of her engaging in protected activity.

### C.  ARGUMENT

21.    Although summary judgment is proper in a case in which there is no genuine dispute of material fact, this is not a case in which the Court should grant summary judgment. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 188 L.Ed. 2d 895 (2014); *see* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

22.    A defendant moving for summary judgment on a plaintiff's claim must demonstrate the absence of a genuine dispute of material fact by either (1) submitting summary-judgment evidence that negates the existence of a material element of the plaintiff's claim or (2) showing there is no evidence to support an essential element of the plaintiff's claim.  *See Celotex Corp.*, 477 U.S. at 322-23; *J. Gils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.rd 1245, 1251 (1st Cir. 1996).  Defendant cannot rely on conclusory statements to establish that plaintiff has not presented evidence on an essential element of her claim.  Rather, defendant must demonstrate the absence of a genuine factual dispute.  *See Celotex Corp.*, 477 U.S. at 324-25.  Only if defendant meets its burden is plaintiff required to respond by summary-judgment proof to show a genuine dispute of material fact.  *See* Fed. R. Civ. P. 56(e)(3).

### I. Plaintiff plead sufficient facts to support her claim for disparate impact under 42 USC §2000e-2(k).

23.    *Thompson v. City of Waco*, 764 F.3d 500, 502-03 (5th Cir.2014)(under new *Iqbal* pleading standard, facts alleged in complaint must state claim to relief that is plausible on its

face). Disparate impact occurs when an employer utilizes a "neutral" test, rule, policy, or selection criterion that impacts adversely on a protected group.  Such practices are illegal unless they can be shown to be "job related and consistent with business necessity."  42 U.S.C. § 2000e-2(k)(1)(A)(i).   In this case we contend the figures also support discrimination claims.

24.     "Under the disparate-impact theory, 'a facially neutral employment practice may be deemed violative of Title VII without evidence of the employer's subjective intent to discriminate that is required in a 'disparate-treatment' case. *At 656:* '[T]he plaintiff's burden in establishing a prima facie [disparate impact] case goes beyond the need to show that there are statistical disparities in the employer's work force.  The plaintiff  must begin by identifying the specific employment practice that is challenged."  *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 645-46 (1989).

25.     A disparate impact claim "'is established' if an employer 'uses' an 'employment practice' that 'causes a disparate impact' on one of the enumerated bases...and "[u]nless and until the defendant pleads and proves a business-necessity defense, the plaintiff wins simply by showing the stated elements."  *Lewis v. City of Chi.*, 560 U.S. 205, 213 (2010).

**II.  Plaintiff has established a prima facie case of discrimination based on race and Defendant's proffered reason for the adverse employment action taken against Plaintiff is pretext.**

26.     An employment discrimination claim does not need to include specific facts establishing a prima facie case of discrimination under the *McDonnell Douglas* burden-shifting analysis and instead need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Swierkiewicz v. Sorema*, 534 U.S. 506, 508 (2002; and see *also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (not an employment-law case holding Plaintiff

must only provide enough facts to state a facially plausible claim to relief to overcome

dismissal); and see also; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

27.     Plaintiff is an African-American who was on FMLA who was the only African-

American at her school.  And in a 10 year period her principal never hired an African-American.

She was replaced by a non-African American.  The principal responded differently to issues of

race and would not assist in handling them.  Plaintiff was the victim of a bigoted comment from

her co-workers that the principal refused to address.  The charges against her were initiated by a

person who was accused of racial bias who said I am going to get you.  One campus official

involved in the investigation was a person she had accused of being biased.  They brought in the

investigator and it was Harrison who primed the investigator when she first arrived.  They

engaged in a possibly illegal search of Plaintiff's email, wiped her hard drive and attempted to

browbeat her into confessing.  The principal told her to pack up all of her things so he is clearly

involved in the decision to terminate her.  Based on all of this evidence this meets the

McDonnell-Douglas burden shifting analysis as well as other ways of proving discrimination.

The Supreme Court said in *Swierkiewicz  that it was never intended that there be only one way of

proving discrimination.*  McDonnell Douglas burden shifting analysis is one way and after we

put forth a prima facie case, which we have, it is their burden to bring forth a non-discriminatory

reason and then we address that and we have below.  Another way to prove discrimination is the

so-called mosaic method, using circumstantial evidence in general.  In this category, a plaintiff

will always survive summary judgment "if he presents circumstantial evidence that creates a

triable issue concerning the employer's discriminatory intent . . . a triable issue of fact exists if

the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of

circumstantial evidence that would allow a jury to infer intentional discrimination by the

13

decision-maker.'"  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  Then it is the task of the finder of fact to determine if such evidence indicates that the decision was made on a discriminatory basis.  *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 146-47 (2000). It can be sufficient to prove discrimination to present circumstantial evidence that consists of many small things, none conclusive in themselves. *Troupe v. May Department Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994) (emph. added).  'Circumstantial evidence may not only be sufficient, but may also be " more certain, satisfying and persuasive than direct evidence . . ."  *Desert Place, Inc. v. Costa*, 59 U.S. 90, 99 (2003).  And of course we also have direct evidence too involving Fields.  Fields called the Plaintiff a little Black counselor and it offended Stephens.  This is like Ash v. Tyson Foods where the United States Supreme Court said that the reference to Black me nas boy might have such an indication of direct bias depending on the circumstances.  *Ash v. Tyson Foods*, 546 U.S. 454 (2006).


Adverse Employment Action

28.     "Adverse employment actions . . . generally fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge."  *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453-54 (7th Cir. 2011).

Pretext

29.     "When an employer offers nondiscriminatory reasons for an adverse employment action, the burden shifts back to the employee to prove that the stated reason for her termination is pretextual.  At this state, the plaintiff has the burden to produce sufficient evidence from which

a jury could reasonably reject the employer's explanation of why it fired her.  She can accomplish this by proving (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate her discharge, or (3) that they were *insufficient* to motivate discharge. The three-part test need not be applied rigidly.  Rather, pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" (Internal quotes omitted.)  *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012).

30.     A "jury can infer pretext from flagrant inaccuracies or inconsistencies in the employer's proffered reason for employment decision or from employer's selective enforcement or investigation of disciplinary policy."  *Baker v. Macon Res.*, 750 F.3d 674, 677 (7th Cir. 2014).

31.     "The failure to conduct a fair investigation can raise an inference of pretext." *Estate of Bassat v. School Dist. No. 1*, 775 F.3d 1233, 1240 (10th Cir.2014).

Constructive Discharge

32.     "Whether an employee would feel forced to resign is case- and fact- specific, but we consider the following factors relevant, singly or in combination: (1) [D]emotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger [or less experienced/qualified] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status]."  *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 342 (5th Cir. 2005).

33.     "Constructive discharge occurs 'when an employer intentionally creates a work environment so intolerable as to compel a reasonable employee to quit, and the employee does in fact quit.' 'The conduct complained of must have been severe or pervasive enough to create an

objectively hostile or abusive work environment, and additionally the plaintiff must subjectively perceive the environment to be abusive." *Tadlock v. Powell*, 291 F.3d 541, 547 (8th Cir. 2002); *Harvill v. Westward Comms.*, 433 F.3d 428, 439-40 (5th Cir. 2005).  See annotation under 42 U.S.C. §2000e-3, *Anti-retaliation--Materially Adverse Employment Action*, p. 1084.

34.     In this case the investigators told her she was guilty of the charge, laughed at her, refused to listen to her side of the story and informed her that even if she was claiming discrimination they weren't required to give her a process because she was saying these things verbally.  Add to that the charges were being made by Ms. Fields who she has indicated engaged in racial and FMLA discrimination against her and that an Assistant Principal who she has accused of racial bias who would not even speak to her also being involved, it was  thought not a good idea to go forward with any internal procedures.  Having a termination on her record would inhibit her getting a job.  Since she took out her retirement for family reasons she really needed the job and did not want the termination on her record and it was a fait accompli with the process identified.  In fact, before the Texas Workforce Commission the Agency said it had indeed told her she would be terminated.  There could not be much stronger evidence of a constructive discharge.  Hearing Officer Baxter says that GCISD said they did not give her an option but told her she would be terminated—we did not give her the choice to resign or be terminated but we let her know February 25 her actions will lead to termination."  Appendix Tab 10, p. 0015.

Hostile Work Environment

35.     Defendant also wrongly claims that Plaintiff has failed to plead a cause of action for hostile work environment and that further her EEOC Charge does not mention a hostile work environment and that it therefore cannot be expected to grow out of the investigation of the

Charge.  The 3 page statement that was included as part of the charge makes it very clear that hostile environment is part of the charge. Appendix Tab 28, p. 0276-0278.  It says:

> The environment for my work was racially hostile to me as the only African-American. White employees picked on me repeatedly even though I was the Lead Counselor.

"Title VII is violated when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'  'An actionable hostile environment claim requires the plaintiff to prove: (1) that the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and (4) that there is a basis for employer liability.'  The factors that we may consider in deciding whether the environment is hostile include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Alexander v. Casino Queen. Inc.*, 739 F.3d 972, 982 (7th Cir.2014).

36.    "A hostile work environment claim is comprised of a series of of separate acts that collectively constitute one 'unlawful employment practice.'  The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened.  It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-10 (2002).

37.    Cases construing the definitional provisions of Title VII or the ADEA are persuasive authority when interpreting the other statute. *Hayden v. La-Z-Boy Chair Co.*, 9 F3rd 617, 619 (7th Cir, 1993).  "An actionable discrimination claim based on hostile work environment under the ADEA is one for which the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment.  The determination of hostility depends on whether a reasonable person would find the work environment to be hostile and whether plaintiff subjectively perceived it to be so.  Minor incidents do not merit relief.  Plaintiffs need not present a list of specific acts.  To establish a hostile work environment, plaintiffs must prove that the incidents were sufficiently continuous and concerted to be considered pervasive.  A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class." (Internal quotes omitted.)  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240-41 (2d Cir.2007).  *See also Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir.1996).

38.    Here, Ms. Stephens mentions on page 2 of the EEOC Form 5 Charge of Discrimination that, "she was excluded from meeting[s], excluded from having lunch with the office group and the hiring process of newly hired staff. [Ms. Stephens] was also harassed, intimidated, the terms and conditions of her employment changed, [and] she was accused of excessive absences due to her medical condition...in comparison to her non-African-American coworkers."  *See* Charge of Discrimination.  Ms. Stephens' Charge details a number of other incidents and acts showing a hostile work environment.  Specifically, however, Ms. Stephens attaches a statement to her Charge of Discrimination that is also referenced therein that states in at least one pertinent part, "The environment for my work was racially <u>hostile</u> to me as the only African-American."  *Id.*  Her deposition indicates how people mock her, accuse her of being

drunk, refuse to speak to her, decline to pick up supplies, etc. for her as they do other employees, make bigoted comments like calling her the little black counselor and harassed her into taking leave and then harassed her for racial reasons to take leave and then harassed  her for taking leave which is a violation of FMLA and disability laws..

Vicarious Liability

39.      An employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." V*ance v. Ball State Univ.*, 133 S.Ct. 2434, 2439, 186 L.Ed. 2d 565 (2013).

40.      "[A]n employer does not have recourse to the Ellerth/Faragher affirmative defense when a supervisor's official act precipitates the constructive discharge."  *Pennsylvania State Police v. Suders*, 542 U.S. 129, 140-41 (2004).

41.      "[A]n employer can be held liable under Title VII if:  the plaintiff's co-worker makes statements maligning the plaintiff, for discriminatory reasons and with the intent to cause the plaintiff's firing; the co-worker's discriminatory acts proximately cause the plaintiff to be fired; and the employer acts negligently by allowing the co-workers' acts to achieve their desired effect though it knows (or reasonably should know) of the discriminatory motivation."  *Velasquez-Perez v. Developers Diversified Rlty. Copr.*, 753 F.3d 265, 274 (1st Cir.2014).  The district's own policy says to inform the principal and she did that on numerous occasions and the principal simply told her to fix it.  The district acknowledges when its supervisory employees are in possession of such information that the district is responsible.  In this case the principal was

told but so too was the testing coordinator (who directed her back to the principal) and a human resources official (about the FMLA retaliation).

### III.  Plaintiff has established a prima facie case of retaliation and Defendant's proffered reason for the adverse employment action is pretext.

42.     "Title VII retaliation claims must be proved according to traditional principles of but-for causation…. [A] plaintiff making a retaliation claim under [42 U.S.C.] §2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *University of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533, 186 L. Ed. 2d. 503 (2013).

43.     "The anti-retaliation provision protects an individual...from retaliation that produces an injury or harm.  [A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which...means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.  At 69-70: [T]he standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 67-68 (2006). *See also Benuzzi v. Board of Educ. of Chi.*, 647 F.3d 652, 665 (7th Cir.2011) (category of materially adverse action is broader than "adverse employment actions" required to sustain discrimination claim).

44.     "[T]o establish a prima facie case of retaliation based on constructive discharge, [the employee] must prove that working conditions would have been so difficult or unpleasant that a reasonable person in her shoes would have felt compelled to resign.  In determining whether a reasonable employee would feel compelled to resign, [courts] have considered the relevancy of the following events, among others: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment

to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status." *Harvill v. Westward Comms.*, 433 F.3d 428, 439-40 (5th Cir.2005). In this case the Plaintiff had the fear of not being able to live or survive because of her need for a job and how a termination would affect that and especially one involving unethical conduct that if found the Superintendent was under a duty to report. The same two people who had interrogated, harassed and laughed at her were going to do the investigation and they admitted to the Texas Workforce Commission that they had told her she would be fired. Plaintiff needed to survive because she had taken most of her retirement out for family reasons and she really had no choice but to resign as she was clearly constructively discharged when they told her she was terminated.

45.     "[A] person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question." *Crawford v. Metropolitan Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 273 (2009).

46.     "'[T]he opposition clause protects not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices.' We have . . . given 'great deference' to the EEOC's interpretation of 'opposing' conduct as 'including complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices.' Importantly, the language of the opposition clause does not specify to whom protected activity must be directed." *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1067-68 (6th Cir.2015).

21

47.     Here, Ms. Stephens both actively reported discrimination throughout the course of her employment with GCISD (when complaining to her Principal, Pete Valamidez, and the Assistant Principal(s)) on various occasions and when she also told the HR "investigators" (Lamb and Padgett) that she thought their actions were discriminatory during their interview of her.

**IV.  Plaintiff exhausted her administrative remedies with regard to her claim of age discrimination and this Court has subject matter to consider that claim.**

48.     This Court has  jurisdiction on Plaintiff's claim for age discrimination.  The Court should consider the additional information provided at the EEOC's Intake and Investigation stage as well as what grew out of the investigation or would reasonably have grown out of it. Here, Ms. Stephens mentioned age in her Additional Information provided to the EEOC Investigator which was provided in writing in May of 2015 in addition to her statement in the initial Charge of Discrimination.  See Appendix Tab 14, p. 0021-0022 (May 1, 2015 Letter to EEOC as Additional Information 36A-2015-00055).

49.     The United States Supreme Court has held "that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines*, Inc., 455 U.S. 385, 393 (1982).  Further, claims that are reasonably related to EEOC charge need not be included in charge.   *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 416-17 (4th Cir.2014).

50.     Cases construing the definitional provisions of Title VII or the ADEA are persuasive authority when interpreting the other statute. *Hayden v. La-Z-Boy Chair Co.*, 9 F3rd 617, 619 (7th Cir, 1993).

51.     "Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *O'Connor v. Consolidated Coin Caterers Corp*, 517 U.S. 308, 313 (1996); *see also General Dynamics Land Sys. v. Cline*, 540 U.S. 581, 595-96 (2004).

52.     Even if the court chooses to believe an employee's assessment of their performance over that of the employer, a plaintiff must also show evidence such as "direct evidence of age discrimination, information about the ages of other employees in plaintiff's position, the treatment and evaluation of other employees, or the employer's variation from standard evaluation practices." *Bienkowski v. American Airlines*, Inc., 851 F.2d 1503, 1508 (5th Cir. 1988).

## V.  Summary Judgment should be denied on Plaintiff's claim of discrimination on the basis of her disabilities because Plaintiff exhausted her administrative remedies and properly pled the same in her Complaint.

53.     Ms. Stephens' Charge of Discrimination to the EEOC specifically discusses "her ADA" at page 1 of the EEOC Form 5 (Charge of Discrimination).  *See* Appendix Tab 28, p. 0271 .  At page 2 of her EEOC Charge, it  also says that "she was accused of excessive absences due to her medical condition…."  *Id.*  Further, in the statement referenced and attached to Ms. Stephens' Charge of Discrimination, she describes specifically how her hostile work environment aggravated her disabilities for which she was prescribed intermittent leave and that the environment became even more discriminatory and hostile as a result of her exercising her rights under FMLA.  *Id.*  Even though she had submitted the proper medical certification and Defendant had acknowledged her right to use FMLA leave in writing, she was nonetheless subjected to increased scrutiny about the truth of her condition and questioned to the point where

Defendants called her at home when she would take her leave to ask if she was faking her condition among other harassing remarks and questions regarding her leave.

54.     Further, in Ms. Stephens's First Amended Complaint Plaintiff provides at the conclusion of paragraph 15 the following: "Ms. Stephens believes that these things happened because of her race, age, and disability as well as her complaining about discriminatory treatment."

55.     Discrimination and retaliation claims under the Americans with Disabilities Act are both subject to the burden-shifting framework outlined in *McDonnell Douglas*.  *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir.2015).

56.     "[T]he ADA provides a cause of action for disability-based harassment.  At 235-36: [T]o succeed on a claim of disability-based harassment, the plaintiff must prove: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based  on her disability or disabilities; (4) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.' Moreover, the disability-based harassment must 'be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment.'  In determining whether a work environment is abusive, this court must consider the entirety of the evidence presented at trial, including 'the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and wehther it unreasonably interferes with an employee's work performance."  *Flowers v. Southern Reg'l Physicians Servs.*, 247 F.3d 229, 234 (5th Cir.2001).

57.     A complainant establishes a prima facie case of discrimination under the ADA by showing that: (1) she is disabled within the meaning of the ADA; (2) she is qualified, with or

without reasonable accommodation, to perform the essential function of the job held or desired; and (3) she was discriminated against because of her disability.  *Stewart v. Waco ISD*, 711 F.3d 513, 518 (5th Cir.2013).

58.     Direct evidence is hard to come by in ADA cases so most ADA plaintiffs rely on circumstantial evidence which might include: "(1) suspicious timing; (2) ambiguous statements or behavior toward other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically received better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action."  *Bunn v. Khourny Enters.*, 753 F.3d 676, 683-84 (7th Cir.2014); *see also EEOC v. LHC Grp.*, 773 F.3d 688, 694-95 (5th Cir.2014)(adopting same three elements to establish prima facie case of discrimination under ADA).  In this case though we have statements by the principal saying she was taking off too much time and there are even documents in the record which show that he checked on her when she was out to see when she might be able to return.  Tapp harassed her when she took leave and made remarks about this.  The principal was notified of them and did nothing. Appendix Tab 22, p. 0089-0096 (Stephens deposition pp. 39 line 9 to p., 46 line 12).  The principal refused to assist with any FMLA harassment.  They even mocked her and said she was faking her sickness and attacked her disability.  Appendix Tab 22, p. 0098-0100 (Stephens deposition p. 48 l. 14 to p. 50 l. 7).

59.     "[E]mployees have an unfettered right to take FMLA leave because of a serious health condition intermittently when 'medically necessary,' with or without employer consent." *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 293 (4th Cir. 2009).  "[N]o 'magic words' are necessary to invoke the protections of the FMLA."  *Id*.

60.     There are "two discrete theories of recovery under the FMLA: (1) the so called 'interference' or 'entitlement' theory arising from §2615(a)(1), and (2) the 'retaliation' or 'discrimination' theory arising from §2615(a)(2).  The central issue raised by the retaliation theory...is 'whether the employer took the adverse action because of the prohibited reason or for a legitimate nondiscriminatory reason.'  [T]he employer's motive is relevant because retaliation claims impose liability on employers that act against employee specifically *because* those employees invoked their FMLA rights."  *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir.2012).  Courts have held that even discouraging an employee from taking such leave is a violation of this law.  See *Gordon v. U. S. Capitol Police*, 778 F.3d 158, 164 (D.C. Cir. 2015).  In regards to proving retaliation, simply showing better treatment for other employees such as Marsha Fields, Plaintiff's co-worker who was also a counselor. *Hull v. Stoughton Trailers, LLC*, 445 F. 3d 949, 951 (7th Cir. 2006).

61.     "[F]iring an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." *Erdman v. Nationwide Ins.*, 582 F.3d 500, 509 (3d Cir.2009).

62.     "*Burlington Northern* [*& Santa Fe Ry. v. White*, 548 U.S. 53 (2006),] expanded the definition of 'materially adverse employment action' for purposes of Title VII retaliation claims.  [A] Title VII plaintiff 'must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might dissuaded a reasonable worker from making or supporting a charge of discrimination.'  The Court rejected the proposition that an actionable act of retaliation must relate to the specific terms and conditions of the employee's employment . . . and construed 'materially adverse action' broadly to include changes in employment.  The Court concluded that only this broader definition

fulfilled the purpose of Title VII's anti-retaliation provisions: preventing employers from deterring their employees from exercising their legitimate legal rights.  This rationale applies with comparable force to the anti-retaliation provision of the FMLA.  The FMLA's anti-retaliation provision has the same underlying purpose as Title VII--and almost identical wording."  *Millea v. Metro-N. R.R.*, 658 F.3d 154, 164 (2d Cir.2011).  This is the *Burlington Northern* standard for materially adverse action.  In summary there is no question that the right to the benefit was interfered with.  Plaintiff even documented this in her letter to Human Resources, besides testifying in the record that the principal himself discouraged her from taking leave and that when she complained about harassment from her co-workers because she took leave he refused to assist her.

### VI.  Defendant's Motion should be denied because Defendant engaged in Spoliation of Evidence, a matter which must be decided by the trial court.

63.    Defendant engaged in spoliation of evidence with regard to the laptop it accused Ms. Stephens of having misused and thereby the documents it claims she wrote for Mr. Cepeda. Defendant's Objections and Answers to Plaintiff's First Interrogatories (Interrogatory No. 3), which Defendant served on Plaintiff on April 22, 2016, states that Defendant obtained the documents it wrongly alleges show a policy violation by Ms. Stephens from her District-issued computer through Padgett and Lamb (HR) taking screenshots of various items after they confiscated the laptop.  See Appendix Tab 19, p. 0037  (Response to Interrogatory No. 3) served on Plaintiff on April 22, 2016.  Defendant then states that Plaintiff's District-issued computer was subsequently sent to the District's IT department to be wiped and was redistributed for student usage. *Id.*  Curiously, Defendant claims that the identity of the person who wiped the computer clean is unknown to Defendant.   *Id.* Incredibly, once Defendant received a letter from the

undersigned counsel regarding the preservation of evidence, Defendant allowed one of the bad actors in this story, Gemma Padgett (HR), to keep the computer for "safe-keeping" upon her request.  A second computer that previously belonged to Ms. Stephens was also sent to Padgett. *Id.* Only after Padgett had the computer for an unknown amount of time, did the District send the computer to be analyzed by another District IT employee to confirm that it contained no documents from Ms. Stephens.  *Id.*  Defendant admits that no documents had been taken from the computer other than when Padgett and Lamb first allegedly took screenshots and documents off of it on their own accord, *Id.*,  after having taking an active part in the District's discrimination and retaliation against Ms. Stephens.

64.    Spoliation is the improper loss or destruction of relevant evidence. *See Brookshire Bros. v. Aldridge*, 438 S.W.3d 9, 13 (Tex.2014); *Wal-Mart Stores v. Johnson*, 106 S.W.3d 718, 721 (Tex.2003); *Cresthaven Nursing Residence v. Freeman*, 134 S.W.3d 214, 225 (Tex.App.—Amarillo 2003, no pet.); *see also Miner Dederick Constr., LLP v. Gulf Chem. & Metallurgical Corp.*, 403 S.W.3d 451, 467 (Tex.App.—Houston [1st Dist.] 2013) (spoliation can include altering evidence), *pet. denied,* 455 S.W.3d 164 (Tex.2015). A party that does not reasonably preserve discoverable evidence can impair the opposing party's ability to present its claims or defenses. *Brookshire Bros.*, 438 S.W.3d at 16; *see Johnson*, 106 S.W.3d at 721.

The duty to preserve arises when a party knows or reasonably should know the following: (1) There is a substantial chance a claim will be filed. *Brookshire Bros.*, 438 S.W.3d at 20; *Johnson*, 106 S.W.3d at 722. For there to be a "substantial chance" of a claim being filed, there must be more than a mere possibility or unwarranted fear of litigation. *Brookshire Bros.*, 438 S.W.3d at 20; *see National Tank Co. v. Brotherton*, 851 S.W.2d 193, 204 (Tex.1993); and (2)

Evidence in the party's possession or control will be material and relevant to the claim. *Brookshire Bros.*, 438 S.W.3d at 20; *Johnson*, 106 S.W.3d at 722.

65.     The producing party breaches its duty to preserve evidence if it does not exercise reasonable care. *Id.*; *see Miner Dederick Constr., LLP v. Gulf Chem. & Metallurgical Corp.*, 403 S.W.3d 451, 466-67 (Tex.App.—Houston [1st Dist.] 2013) (producing party must exercise reasonable care in preserving evidence, which includes duty to not alter evidence's condition; extraordinary measures to preserve evidence are not necessary), *pet. denied,* 455 S.W.3d 164 (Tex.2015). The producing party's breach can be either intentional or negligent. *Brookshire Bros.*, 438 S.W.3d at 20; *Trevino v. Ortega*, 969 S.W.2d 950, 957 (Tex.1998) (Baker, J., concurring).

66.     The trial court must determine whether a party spoliated evidence and what remedy is appropriate. *Wackenhut Corp. v. Gutierrez*, 453 S.W.3d 917, 921 (Tex.2015); *Brookshire Bros. v. Aldridge*, 438 S.W.3d 9, 20 (Tex.2014); *see Trevino v. Ortega*, 969 S.W.2d 950, 954 (Tex.1998) (Baker, J., concurring). Because spoliation is an evidentiary concept, rather than a separate cause of action, and because spoliation is basically a type of discovery abuse, it is a matter to be resolved by the trial court. *Brookshire Bros.*, 438 S.W.3d at 19-20; *Telesis/Parkwood Ret. I, Ltd. v. Anderson*, 462 S.W.3d 212, 253 (Tex.App.—El Paso 2015, no pet.). The district is well aware of its responsibility.   In DIA local 220906 relating to an employee's welfare and freedom from discrimination, harassment and retaliation, the policy includes a category on records retention. This policy provides that copies "of reports alleging prohibited conduct, investigation reports, and related records shall be maintained by the District for a period of at least three years.  [See CPC]." In this case all documents relating to the computer search or investigation are lost and all we have is what Padgett and Lamb want us to have.  We do not know the sort for which documents they

sought before the screenshots were taken, nor do we know how they got to the screen shots of matters in her personal email [which raises other legal issues].  And if they say there was too much use of a computer, which is not something she was terminated for, there are no documents left on her computer or hard drive to do any kind of an analysis.  The law does not tell this court or the employee who was terminated that they simply have to trust that nothing was there.  This court can look at the text messages between Ms. Fields and Plaintiff to understand there were serious feelings involved, and the district wanted to win so badly in front of the Workforce Commission in September it revealed to the Hearing Officer that they had told the Plaintiff as she had maintained that she was terminated.  She went to the district to get copies of records and her advocate even sent a letter subsequent in time.  She repeatedly said to Padgett and Lamb that she was being discriminated against and wanted her due process.  The district then sends her a letter saying that she was terminated even after she resigned.  See Appendix Tab 21, p. 0050.

67.     If the court determines that a party has spoliated evidence, the court must assess and impose an appropriate remedy. *Brookshire Bros.*, 438 S.W.3d at 14. That is, the court must assess the culpability of the producing party, evaluate any prejudice suffered by the requesting party, and impose a remedy. *Id.*  The types of remedies include sanctions on the producing party, *Brookshire Bros.*, 438 S.W.3d at 21, a spoliation jury instruction, *Brookshire Bros.*, 438 S.W.3d at 22, and any other remedy it deems appropriate based on the facts of the case. *Brookshire Bros.*, 438 S.W.3d at 21.  We would request that this court deny the motion for summary judgment and prevent any evidence going forward in this cause in regards to any issue involving any document allegedly found or discovered in or on Plaintiff's computer.

## D.     OBJECTIONS

68.   The Court should deny defendant's motion for summary judgment because defendant's answer does not allege all the elements of its defense and therefore does not support its motion for summary judgment.  *See Ienco v. Angarone*, 429 F.3d 680, 684-85 (7th Cir. 2005).

69.   The Court should deny defendant's motion for summary judgment because it does not challenge the FMLA cause of action and fails to address the full measure of how one can engage in discrimination or retaliation as the McDonnell-Douglas analysis is not exclusive so they have failed to brief or address the other areas.  *See Wilks v. Elizabeth Arden, Inc.*, 507 F. Supp. 2d 179, 184-85 (D. Conn. 2007); *McDermott v. Lehman*, 594 F. Supp. 1315, 1317 (D. Me. 1984).

| Defendant's Summary-Judgment Evidence | Plaintiff's Objection |
|---|---|
| *Exhibit 1* - Affidavit of Gemma Padgett | Padgett contends that no one in Human Resources was notified of problems with her FMLA leave, but the documentary evidence clearly contradicts this.  See PLAINTIFF 0097-08 and 0171.  The comment about what a co-worker told an assistant principal in paragraph 3 is hearsay.  Plaintiff objects to the comments about the failure to receive discrimination complaints as self-serving.  Paragraph 4 is objected to because there is no basis for the opinion and no showing how this person, who is not an educator, is qualified to utter such an opinion.  Paragraph 5 is objected to as well as hearsay, both regarding what Becky Lamb did and what Plaintiff said which is hearsay on hearsay.  We object to paragraph 6 because of the spoliation of evidence, the best evidence not being available and the apparent violation of federal law by accessing Plaintiff's private email account.  It is hearsay in paragraph 6 too about what Plaintiff said about the paper.  Human Resources does terminate employees, even if the Board subsequently terminates the contract so this is |

| | |
|---|---|
| | a self-serving statement.  They informed the Workforce Commission that they had terminated her.  The comments about why the investigation was ended is self-serving.  Paragraph 7 is self-serving. |
| *Exhibit 1A* - Educator Term Contract | |
| *Exhibit 1B* - October 3, 2013 Letter from Defendant to Plaintiff re. FMLA Leave, Receipt of Acknowledgment, Certification of Health Care Provider Information | |
| *Exhibit 1C* -<br><br>GCISD DH Legal, Employee Standards of Conduct, Date Issued 10/30/2015<br><br>GCISD - Technology, Acceptable Use Policy - Staff, 2014-2015<br><br>GCISD District Owned Mobile Computing Device Agreement | Plaintiff objects to the policies because their use requires the consideration of information in regards to computer and other information that has been destroyed.  As a result the evidence is subject to a ruling on spoliation.  Further the termination was for the alleged plagiarism and not whether there was an acceptable use, so though we maintain her use was acceptable, we believe the policy should not be admitted nor should the policy on District Owned Mobile Computing Devices. |
| *Exhibit 1D* - Paper, "The Third Great Awakening" with Michael Cepeda's name on it. | We object to the authenticity of this document, because of spoliation the Plaintiff is limited in how she can address this paper and there is no way of ensuring exactly how this  document was obtained and if it was obtained in accordance with the law or was there a violation of federal electronic privacy.  And the document is unduly prejudicial because we cannot address how the document was generated, etc., as the Plaintiff and Mr. Eaton say they did not do any such document and place Mr. Cepeda's name there. |
| *Exhibit 1E* - February 27, 2014 Letter from Defendant to Plaintiff re. Administrative Leave | Plaintiff objects to the authenticity of this letter.  The Plaintiff testified she had never seen the letter. |
| *Exhibit 1F* - February 27, 2014 Communication re. Resignation | Plaintiff objects to the authenticity of this letter.  The Plaintiff testified the letter she was shown that she actually signed it. |

| | |
|---|---|
| *Exhibit 2* - Affidavit of Dr. Robyn Ryan | Object as self serving and as contrary to DIA Local 220906.  It is hearsay as to whether or not complaints were made to the Board of Trustees.  It is self serving to say what happens in regards to an academic fraud allegation, especially when one is brought against an African-American who has been subjected to discrimination by the persons bringing the complaint (Defendant's responses to Plaintiff's First Set of Interrogatories make it clear that Marsha Fields actually made or filed the complaint) |
| *Exhibit 2A* - GCISD DIA Local, Employee Welfare, Freedom from Discrimination, Harassment, and Retaliation, Issued 9/8/2014 | |
| *Exhibit 3* - Excerpts of the Oral Deposition of Linda K. Eaton-Stephens | Excerpts are subject to objections made and a request for optional completeness. |
| *Exhibit 3A* - EEOC Charge of Discrimination 36A-2015-00055 | Plaintiff objects to this document because it is not complete.  There is a 3 page statement that is part of the charge and that was not included. |
| *Exhibit 3B* - EEOC Intake Questionnaire | Plaintiff objects to this document on the grounds of authenticity, undue prejudice and it is misleading in how it describes the issue regarding disability. |
| *Exhibit 4* - Excerpts of Oral Deposition of Michael Cepeda | Excerpts are subject to objections made and a request for optional completeness. |
| *Exhibit 5* - Texas Education Code §§ 21.211, 21.251, 21.252, 21.253, 21.254, 21.255, 21.256, 21.257, 21.258, 21.259, 21.260 | |

## E.  SUMMARY-JUDGMENT EVIDENCE

70.     In support of her response, plaintiff includes the following evidence in the attached appendix.

| Appendix Tab Number | Document Name |
|---|---|
| Tab 1 | Declaration/Affidavit of Weldon Washington |
| Tab 2 | Declaration of Stephanie Bufe |
| Tab 3 | Declaration of Jailyn Cepeda |
| Tab 4 | Declaration of Frieda Landerholm |
| Tab 5 | Declaration of Julie Buttell |
| Tab 6 | Declaration of Stephen Perez |
| Tab 7 | FMLA Certification of Health Care Provider Form and GCISD Letter in Response |
| Tab 8 | 10-3-13 FMLA Acknowledgment signed by Stephens |
| Tab 9 | February 27, 2014 Letter placing Stephens on Administrative Leave |
| Tab 10 | PLAINTIFF 000082 - TWC Doc, Notes continued from Oral Reply where they admit they told her she was going to be terminated |
| Tab 11 | GCISD 831-832 - TWC Benefits - Non Monetary Determinations Fact Finding |
| Tab 12 | 4-23-14 TWC Decision Log |
| Tab 13 | Statement of Overpaid Unemployment Benefits Account |

| Tab 14 | May 1, 2015 Letter to EEOC as Additional Information 36A-2015-00055 |
|--------|--------------------------------------------------------------------|
| Tab 15 | EEOC Notice of Right to File a Civil Action 36A-2015-00055 |
| Tab 16 | DIA (LEGAL), Employee Welfare, Freedom from Discrimination, Harassment, and Retaliation |
| Tab 17 | 2014-2015 GCISD Technology  Acceptable Use Policy -Staff |
| Tab 18 | GCISD District-Owned Mobile Computing Device Agreement |
| Tab 19 | Defendant's Objections and Answers to Plaintiff's First Interrogatories - Response to Interrogatory No. 3  (served on April 22, 2016) |
| Tab 20 | Myers Email to GB re. Docs on Computer |
| Tab 21 | 2/28/14 GCISD Termination Document (Not eligible for rehire) |
| Tab 22 | Deposition of Linda Stephens |
| Tab 23 | Letter dated 11/14/14 from Potter Bledsoe, LLP to GCISD requesting Preservation of Records |
| Tab 24 | May 1, 2015 Statement from Linda Stephens |
| Tab 25 | September 28, 2014 Statement from Michael Cepeda |
| Tab 26 | Group Text Message between Linda Stephens and Marsha Fields |
| Tab 27 | Linda Stephens' Term Contract |
| Tab 28 | EEOC Charge of Discrimination 36A-2015-00055 |
| Tab 29 | Plaintiff's Answers to Defendant's First Set of Interrogatories |

| Tab 30 | Character References from Lynsey Bradley and Ronnie Eaton Sr. |
| Tab 31 | Affidavit from Michael Cepeda |
| Tab 32 | Affidavit from Linda Stephens |
| Tab 33 | GCISD Telephone Reference Check Sheet |
| Tab 34 | Professional School Counselor Performance Evaluation Form and Job Description |
| Tab 35 | Emails between Lee Anne Messina to Linda Stephens dated September 26, 2013 |
| Tab 36 | Emails between Lee Anne Messina to Linda Stephens dated October 11, 2013 |

### F.  CONCLUSION/PRAYER

71.     For these reasons, plaintiff asks the Court to deny defendant's motion for summary judgment. Plaintiff has raised a number of issues in this litigation, including racial discrimination (she was even described in a bigoted name by the person who made the complaint that led to her termination according to the interrogatory responses and treated differently.  Another involved retaliation and this is because she had complained about being the only Black at the school and thought others should have been hired and complained about a principal who had discriminated against African-American professionals and also about the discrimination against her.  She said once she mentioned the discriminatory bias of the new Assistant Principal the Principal's attitude towards her changed and he would not even speak to her.  Race discrimination caused the Plaintiff to need to be placed on FMLA status and once she was placed on FMLA she was harassed by employees and even her principal.  Defendants have not actually joined the issue of our FMLA claims.  It is a separate and distinct claim and does not

36

involve EEOC exhaustion.   The school officials were looking to terminate Stephens, so when legitimate complaints of discrimination or FMLA retaliation or discrimination were lodged, the administration sat on them and did not follow district policy.   The Plaintiff was a hard working and high performing employee who was doing a good deed for a young married man by tutoring him for no cost.  Appropriately, she had limited private use of the computer and sent in a paper to a class for the young man who was also an employee of the district.   Those who wished to terminate her seized upon these circumstances and their power and control and terminated a person with a great record as an educator stemming 35 years.

Respectfully submitted,

**THE BLEDSOE LAW FIRM, PLLC**

By:   **/s/Gary L. Bledsoe**
Gary L. Bledsoe
State Bar No. 02476500
garybledsoe@sbcglobal.net
State Bar No. 24087801
316 W. 12th Street
Austin, Texas 78701
(512) 322-9992 Telephone
(512) 322-0840 Fax


Jesse Gaines
State Bar No.07570800
gainesjesse@ymail.com
P.O. Box 50093
Ft Worth, TX 76105
Tel: (817) 714-9988

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 3rd day of August 2016, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to counsel of record.


<u>**/s/ Gary L. Bledsoe**</u>
Gary L. Bledsoe